IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| STONE BASKET INNOVATIONS LLC, | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:15-CV-464-JRG-RSP |
| COOK MEDICAL LLC, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On March 18, 2016, the Court held a hearing to determine the proper construction of the disputed claim terms in United States Patent No. 6,551,327 ("the '327 Patent"). After considering the arguments made by the parties at the hearing and in the parties' claim construction briefing (Dkt. Nos. 32, 34, and 36), the Court issues this Claim Construction Memorandum and Order.

# TABLE OF CONTENTS

I. BACKGROUND ........................................................................................................... 3

II. APPLICABLE LAW ................................................................................................... 6

III. CONSTRUCTION OF AGREED TERMS ................................................................. 8

IV. CONSTRUCTION OF DISPUTED TERMS .............................................................. 9

    1. "first end portion" and "second end portion" ................................................. 9

V. CONCLUSION ............................................................................................................ 17

## I. BACKGROUND

The '327 Patent generally relates to an endoscopic stone extraction device that "includes a handle that supports a sheath, and a filament such as a wire slidably disposed in the sheath." *See* '327 Patent at Abstract.[1] The specification states that these devices are used "for extracting stones such as ureteral stones, calaceal stones and other calculus and the like from the renal or biliary systems." *Id.* at 1:7–9. Figure 1 of the '327 Patent illustrates an exemplary embodiment of the endoscopic stone extraction device.



*Id.* at Figure 1. The specification states that "[a] typical stone extraction basket includes a wire

---

[1] The Abstract of the '327 Patent follows:
>An endoscopic stone extraction device includes a handle that supports a sheath, and a filament such as a wire slidably disposed in the sheath. One end of the wire is mounted to the handle for rotation with respect to the handle and the other end of the handle supports a stone extraction basket. A manipulator is provided on the wire to allow a user to rotate the filament and therefore the basket with respect to the handle. The basket can have a side-facing opening or a rear-facing opening. In either case, a stone retention region is provided with relatively small openings sized to retain stones smaller than two millimeters in diameter.

basket carried by one end of a wire that is received within the lumen of a sheath." *Id.* at 1:19–22. The specification further states that "[t]he end of the wire opposite the basket is secured to a handle that is used to slide the sheath over the wire, thereby moving the basket into and out of the lumen of the sheath." *Id.* at 1:22–24. The specification adds that "[w]hen the basket is out of the sheath, it expands to receive a stone." *Id.* at 1:24–25. The specification concludes that "[t]he sheath is then moved toward the basket to reduce the size of the basket openings, and the basket and the enclosed stone are removed from the body." *Id.* at 1:25–28.

According to the specification, "[c]onventional stone extraction baskets are not optimized for the extraction of shattered stone fragments." *Id.* at 1:33–35. Figure 9 of the '327 Patent illustrates an exemplary embodiment of the stone retention basket used in embodiments of the device.



*Id.* at Figure 9. The specification states that the stone extraction basket "includes a stone entrance region 100 and a stone retention region 102." *Id.* at 4:32–33. The specification adds that "[t]his

basket is formed by a set of longitudinal basket wires 104 and a set of lateral basket wires 106." *Id.* at 4:35–36. The specification further states that "[t]he longitudinal basket wires 104 form a larger opening 108 in the stone entrance region 100, and the basket wires 104, 106 cooperate to form a number of smaller openings 110 in the stone retention region 102." *Id.* at 4:36–40. The specification adds that "the larger opening 108 is sized to admit a stone that is at least two millimeters in diameter, and the smaller openings 110 are sized to retain a stone smaller than two millimeters in diameter." *Id.* at 4:40–44.

Plaintiff brings suit alleging infringement of claims 1 and 2 of the '327 Patent. Claim 1 of the '327 Patent is an exemplary claim and recites the following elements (disputed term in italics):

> 1. An endoscopic stone-extraction device comprising:
> a support filament comprising a *first end portion* and a *second end portion*;
> a sheath comprising a lumen, the support filament disposed in the lumen such that the sheath is slideable with respect to the support filament;
> a collapsible stone-extraction basket carried by the *first end portion* of the support filament and receivable within the lumen of the sheath;
> a handle comprising a sheath movement element, wherein movement of the sheath movement element in a first direction advances the sheath and causes the basket to at least partially collapse inside the lumen of the sheath, and wherein movement of the sheath movement element in a second direction retracts the sheath and causes the basket to expand to an operational shape outside the lumen of the sheath;
> the basket, when expanded to the operation shape outside the lumen of the sheath, comprising a stone-entrance region and a stone-retention region, the stone-entrance region comprising a first opening sized to admit a stone into the basket, the stone-retention region comprising a plurality of second openings, all of the second openings being smaller than the first opening;
> the first opening facing the *first end portion* of the support filament, the stone-retention region positioned on a side of

          the basket opposite the *first end portion* of the support filament;

          wherein the basket comprises a set of longitudinal basket filaments radiating from the *first end portion* of the support filament and a set of lateral basket filaments extending between the longitudinal basket filaments, the lateral basket filaments positioned substantially entirely in the stone-retention region of the basket.

## II. APPLICABLE LAW

### A. Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See id.* at 1313. *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For

example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002); *Trs. of Columbia Univ. in the City of New York v. Symantec Corp.*, No. 2015-1146, 2016 WL 386068, slip op., at *2 (Fed. Cir. Feb. 2, 2016). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

## III. CONSTRUCTION OF AGREED TERMS

The parties agreed to the construction of the following term:

| Claim Term/Phrase | Agreed Construction |
|---|---|
| "end portion" | "the end of a structure such as a filament along with the adjacent portion of the structure" |

Dkt. No. 37 at 2. In view of the parties' agreement on the proper construction of the identified terms, the Court hereby **ADOPTS** the parties' agreed construction.

## IV. CONSTRUCTION OF DISPUTED TERMS

The parties' dispute focuses on the meaning and scope of two terms in the '327 Patent.

### 1. "first end portion" and "second end portion" [2]

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **"first end portion"** | no construction is necessary | "the proximal end (*i.e.*, the end closer to the physician)" |
| **"second end portion"** | no construction is necessary | "the distal end of the support filament (*i.e.*, the end further from the physician)"[3] |

#### a) The Parties' Positions

The parties dispute whether the terms "first end" and "second end" require construction. Plaintiff argues that the words of a claim are generally given their ordinary and customary meaning. "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." (Dkt. No. 32 at 9) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc)). Plaintiff contends that an ordinary person would immediately appreciate that a "filament" necessarily has two ends. (Dkt. No. 32 at 8.) Plaintiff argues that the claim identifies one end as the "first end," and the other end as the "second end." (*Id.* at 9.) Plaintiff further argues that the patentee did not act as

---

[2] The Court notes that Defendant proposed "first end" and "second end" for construction. Plaintiff contends that the claims recite a "first end portion" and a "second end portion." (Dkt. No. 36 at 4.) Plaintiff argues that the term "end portion" is defined in the specification, and that the parties agreed to that construction. (*Id.*) According to Plaintiff, all that remains for claim construction is the meaning of the terms "first" and "second." (*Id.*) The Court agrees, and will consider the terms "first end portion" and "second end portion," in light of the parties' agreed construction for "end portion."

[3] Defendant states that in the Joint Claim Construction Statement (Dkt. No. 30-1), it inadvertently described its proposed construction of "second end" as the "distal *portion* of the support filament," rather than the "distal *end* of the support filament." (Dkt. No. 34 at 6 n.1) (emphasis in original).

his own lexicographer, and did not make a clear and unequivocal disclaimer of the full scope of the plain and ordinary meaning of these terms. (*Id.* at 10.) Therefore, according to Plaintiff, the claim language is clear on its face, and no additional construction is needed. (*Id.* at 7.)

Defendant argues that the specification refers to the "first end" as the end of the support filament that is "rotatably secured to the grip" on the handle of the device. (Dkt. No. 34 at 8) (citing '327 Patent at 2:33–35). Defendant further contends that the specification repeatedly uses the term "first end" to refer to this location in describing the claimed invention. (Dkt. No. 34 at 8) (citing '327 Patent at 2:31–38, 3:31–33, 4:14–16, Fig. 2). According to Defendant, a person skilled in the art would understand from the specification that the "first end" of the support filament is on the "proximal end" of the device (*i.e.*, the end closest to the physician during use). (Dkt. No. 34 at 8.)

Defendant also argues that the specification describes the term "second end" as the end of the support filament that "supports a stone extraction basket." (*Id.* at 8) (citing '327 Patent at 2:36 38). Defendant contends that the specification repeatedly uses the term "second end" to refer to this specific location in describing the claimed invention. (Dkt. No. 34 at 9) (citing '327 at 2:31-38, 4:55–57, 5:1–5, Figs. 1, 9-11). According to Defendant, a person skilled in the art would understand from the specification that the "second end" of the support filament is the "distal end" of the device (*i.e.*, the end furthest from the physician during use). (Dkt. No. 34 at 9.)

Regarding Plaintiff's position, Defendant argues that it is directly contrary to the meaning of the terms provided in the specification. (*Id.* at 10.) Defendant contends that Plaintiff has provided no guidance as to which end of the claimed invention is the "first end," and which end is the "second end." (*Id.* at 11.) Defendant argues that the claim language merges two terms

defined in the specification ("first end" and "end portion") to create an entirely new term ("first end portion") that is not defined or even mentioned in the specification. (*Id.*)

Plaintiff replies that the only substantive claim term related to this claim construction dispute is "end portion." (Dkt. No. 36 at 4.) Plaintiff notes that the term "end portion" was defined explicitly in the specification, and that the parties agreed to that construction. (*Id.* at 4.) According to Plaintiff, all that remains for claim construction is the meaning of the terms "first" and "second." (*Id.*) Plaintiff argues the plain and ordinary meaning of these terms as they relate to a "support filament" is clear to a person of ordinary skill in the art, to a lay judge, and to a jury. (*Id.* at 6.)

Plaintiff also argues that it is widely understood by courts and practitioners that the terms "first" and "second" in a patent claim are modifiers, used to delineate multiple instances of the same or similar structure. (*Id.* at 7.) According to Plaintiff, "first" and "second" are merely modifiers to distinguish between the two ends of a filament, and that there is no basis to import a spatial location of "first" from the specification into the claims. (*Id.* at 8.)

Plaintiff further argues that the plain meaning of the claim language is entirely consistent with the specification. (*Id.*) Plaintiff contends claim 1 states that the stone-extraction basket is carried by the first end portion, and that the stone-extraction device comprises a handle. (*Id.*) Plaintiff argues that every description in the specification, and every figure illustrating the invention clearly shows that the stone-extraction basket and the handle are at opposite ends of the support filament. (*Id.* at 9.) Plaintiff further argues that Defendant's constructions exclude all embodiments, makes the claim invention inconsistent with the specification and inoperable, and improperly imports additional limitations into the claims. (*Id.* at 5.)

Finally, Plaintiff argues that under Defendant's constructions, the endoscopic extraction

device would be designed to be used so that the "handle" is inserted into a patient's body for the retrieval of stones, while the physician holds the "stone-extraction basket." (*Id.* at 11.) Plaintiff contends that this would be in direct contravention to the described use of the invention in the specification, and the understanding of a person of ordinary skill in the art. (*Id.* at 11-12.) Plaintiff further argues that Defendant's constructions improperly import the limitations of a "physician" and orientation of the apparatus relative to the physician into the claims. (*Id.* at 12.)

For the following reasons, the Court finds that the terms **"first end portion"** and **"second end portion"** do not require construction.

### b) Analysis

To begin its analysis, the Court turns to the language of the claims. The term "first end portion" appears in claims 1 and 2 of the '327 Patent, and the term "second end portion" appears in claim 1 of the '327 Patent. Specifically, claim 1 recites "a support filament comprising a first end portion and a second end portion." Claim 1 further recites that a collapsible stone-extraction basket is "carried by the first end portion of the support filament." Considering this claim language, the Court finds that a person of ordinary skill in the art would understand that "first" and "second" are used in claim 1 to delineate each end of the support filament.

It is widely understood that the terms "first" and "second" in a patent claim are modifiers, used to delineate multiple instances of the same or similar structure. *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003) ("The use of the terms "first" and "second" is a common patent-law convention to distinguish between repeated instances of an element or limitation."); *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 992 (Fed. Cir. 2003) ("[F]irst and second opposed ends"). Here, the parties agreed to a construction for the term "end portion" based on an explicit definition provided by the patentee

in the specification. *See* '327 Patent at 5:61–63 ("The term 'end portion' is intended broadly to encompass the end of structure such as a filament along with an adjacent portion of the structure."). Given this definition, a person of ordinary skill in the art would understand the terms "first" and "second" were added to "end portion" to indicate that the recited filament has two different "end portions."

Indeed, claim 1 recites that the stone-extraction basket is carried by the "end portion" of the support filament labeled "first," as opposed to the "end portion" of the filament labeled "second." The Court further notes that Defendant agreed at the claim construction hearing that this was a common sense reading of claim 1. Accordingly, the Court finds the claim language on its face is unambiguous, and indicates that the disputed terms do not require construction.

Turning to the specification, the Court finds that the claim language is consistent with the specification. For example, every disclosed embodiment indicates that the support filament has a first end that is opposite the second end. *See, e.g.*, '327 Patent at 1:20–28 ("A typical stone extraction basket includes a wire basket carried by one end of a wire that is received within the lumen of a sheath. The end of the wire opposite the basket is secured to a handle that is used to slide the sheath over the wire, thereby moving the basket into an out of the lumen of the sheath."). Moreover, every disclosed embodiment illustrates that the collapsible stone-extraction basket is secured to one end of the filament, and that the handle is secured to the opposite end of the filament. *See, e.g.*, '327 Patent at 2:31-38, 3:31-33, 4:14-16, Figs. 1 and 2. Indeed, Defendant agreed at the claim construction hearing that the "first end" and "second end" were intended to refer to opposite ends of the support filament.

Defendant argues that the specification, not the claims, refers to the "first end" as the end of the support filament that is "rotatably secured to the grip" on the handle of the device (*i.e.*, the

end closest to the physician during use). (Dkt. No. 34 at 8) (citing '327 Patent at 2:33–35). According to Defendant, a person skilled in the art would understand from the specification that the "first end" of the support filament is on the "proximal end" of the device (*i.e.*, the end closest to the physician during use). (Dkt. No. 34 at 8.) Defendant also argues the specification describes the term "second end" as the end of the support filament that "supports a stone extraction basket." (Dkt. No. 34 at 8) (citing '327 Patent at 2:36–38). According to Defendant, a person skilled in the art would understand from the specification that the "second end" of the support filament is the "distal end" of the device (*i.e.*, the end furthest from the physician during use). (Dkt. No. 34 at 9.) The Court disagrees with Defendant's analysis.

As an initial matter, claim 1 recites a "first end portion" and a "second end portion." In contrast, Defendant cites to portions of the specification that refer to a "first end" and a "second end." Defendant does not argue, and the Court does not find that the patentee acted as his own lexicographer, or disclaimed the full scope of the plain and ordinary meaning of "first" and "second." Instead, the patentee provided an explicit definition for "end portion," without limiting the terms "first" or "second," or changing their plain and ordinary meaning.

Moreover, contrary to Defendant's suggestion, the use of "first end" or "second end" in the claim language is consistent with the specification. Like claim 1, the specification indicates that the filament has a first end and a second end. '327 Patent at 2: 31–32 ("The device also includes a filament 22 having a first end 24 (FIG. 2) and a second end 26 (FIG. 1)."). Likewise, the specification further indicates that the collapsible stone-extraction basket is secured to one end of the filament, and that the handle is secured to the opposite end filament. *See, e.g.*, '327 Patent at 2:31-38, 3:31-33, 4:14-16, Figs. 1 and 2. Accordingly, the Court finds that the claim language is unambiguous, and that the specification does not indicate that the claim terms

require further construction.

Turning to Defendant's constructions, the Court rejects Defendant's constructions because they contradict the intrinsic evidence, and would exclude every disclosed embodiment. Defendant's constructions require the "first end [portion]" to be the end "closer to the physician," and the "second end [portion]" to be the end "further from the physician." Thus, under Defendant's constructions, the "stone-extraction basket" would be located at the "proximal end (*i.e.*, the end closer the physician)," and the handle would be at the "the distal portion of the support filament (*i.e.*, the portion further from the physician)." In other words, Defendant's constructions would require inserting the "handle" into a patient's body for the retrieval of stones, while the physician holds the "stone-extraction basket." This is not how a person of ordinary skill in the art would interpret the intrinsic evidence. Indeed, Defendant agreed at the claim construction hearing that a person of ordinary skill in the art would not read the intrinsic evidence in this manner.

Instead, Defendant argued at the claim construction hearing that claim 1 includes a drafting error, because the patentee flipped the use of "first" and "second" in the claims, from the use of "first" and "second" in the specification. The Court disagrees that claim 1 includes a drafting error, and finds that Defendant's constructions would import unwarranted limitations into the claim. Defendant proposes construing "first end" as the "proximal end," and "second end" as the "distal end." The Court finds that the words "proximal" and "distal" do not appear anywhere in the specification."[4] In fact, the word "proximally" appears only once in the specification, and it is used to describe the relative position of the basket to a stone. '327 Patent

---

[4] During the claim construction hearing, Defendant indicated that the phrase "(*i.e.*, the end closer to the physician)" in its construction for "first end," and the phrase "(*i.e.*, the end further from the physician)" in its construction for "second end," were not necessary and could be deleted.

at 5:7–10 ("Also, the basket 28' may be positioned proximally of a stone prior to lithothripsy to prevent stone fragments from migrating up the ureter."). Accordingly, the Court rejects Defendant's constructions because they would read limitations into the claims that do not appear anywhere in the intrinsic evidence.

Moreover, there is not one instance in the intrinsic evidence where the end portion that secures the collapsible stone-extraction basket is identified as "the proximal end (*i.e.*, the end closer to the physician)." In fact, the intrinsic evidence consistently indicates that the end that secures the collapsible stone-extraction basket is the end of the filament that is inserted into the patient, and is not the end closer to the physician. As discussed, the specification states that the handle and the stone-extraction basket are located at opposite ends of the support filament. '327 Patent at 2:31–34. The specification further indicates that the physician grasps the handle during use, and that the stone-extraction basket is intended to be inserted into the body of a patient to extract a stone. *Id.* at 4:30–64. Defendant's constructions would require the exact opposite result. Accordingly, the Court rejects Defendant's constructions because they are inconsistent with the intrinsic evidence, and would exclude every disclosed embodiment from the scope of the claims. *See Rambus Inc. v. Rea*, 731 F.3d 1248, 1253 (Fed. Cir. 2013) ("A claim construction that excludes the preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'"), quoting *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011) ("[T]here is a strong presumption against a claim construction that excludes a disclosed embodiment."); *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("[O]ur court has cautioned against interpreting a claim term in a way that excludes disclosed embodiments, when that term has multiple ordinary meanings

consistent with the intrinsic record."); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996) ("We share the district court's view that it is unlikely that an inventor would define the invention in a way that excluded the preferred embodiment, or that persons of skill in this field would read the specification in such a way.").

In sum, the Court finds that claim 1 recites that the stone-extraction basket is carried by the "end portion" of the support filament identified as the "first end portion," as opposed to the "end portion" of the filament identified as the "second end portion." The intrinsic evidence does not require more, and Defendant's unwarranted limitations will not be read into the claims.

### c) Court's Construction

In light of the evidence submitted by the parties, the Court finds that the terms **"first end portion"** and **"second end portion"** are unambiguous and do not require construction.

## V. CONCLUSION

The Court adopts the above constructions. The parties are ordered to not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any part of this opinion, other than the definitions adopted by the Court, in the presence of the jury. However, the parties are reminded that the testimony of any witness is bound by the Court's reasoning in this order but any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**It is SO ORDERED.**

**SIGNED this 25th day of March, 2016.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE